**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE ADOPTION OF: M.J.J., M.J.J., JR., MINORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF W.B., BIOLOGICAL MOTHER | : | |
| | : | No. 624 WDA 2018 |

Appeal from the Order March 27, 2018
in the Court of Common Pleas of Clearfield County Orphans' Court at
No(s):  O.C. 3456-2017,
O.C. 3457-2017

BEFORE:   OLSON, MCLAUGHLIN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 06, 2018**

W.B. (Mother) appeals from the order entered March 27, 2018, which granted the petitions of M.J.J. (Father) and terminated involuntarily her parental rights to her minor children, M.J.J., a female born in August 2007, and M.J.J., Jr., a male born in August 2010 (collectively, Children).  We affirm.

Mother and Father lived together until approximately 2010.  After their separation, Father began dating M.J. (Stepmother).  On M.J.J., Jr.'s, second birthday, in August 2012, Mother suffered a mental health crisis during which she threatened to kill herself and Children.  Father retrieved Children from Mother's care and Stepmother drove Mother to the hospital.  After this incident, the parties entered into a custody consent order, filed October 10, 2012, awarding Mother shared legal custody and supervised partial physical

_____

* Retired Senior Judge assigned to the Superior Court.

custody of Children every Wednesday afternoon. The order also provided that Mother could call Children on the telephone up to two times per day. Mother never exercised custody pursuant to the order and had no further contact with Children of any kind.

On July 12, 2017, Mother filed a petition for modification of custody. The details of this custody proceeding are not entirely clear from the certified record. However, Mother filed a request to withdraw her petition on October 16, 2017, citing health concerns.[1] Meanwhile, Father married Stepmother in September 2017.

On November 27, 2017, Father filed petitions to terminate Mother's parental rights to Children involuntarily. Father filed amended petitions on January 18, 2018.[2] The orphans' court conducted a termination hearing on February 14, 2018.[3] Following the hearing, on March 27, 2018, the court

---

[1] Father testified that there "was no hearing or anything" during the custody proceedings because Mother failed to pay a mediation fee. N.T., 2/14/2018, at 21.

[2] Father amended the petitions to aver that Mother last had contact with Children in 2012. The original petitions indicated 2014.

[3] The orphans' court appointed counsel to represent Children during these proceedings. On appeal, Children's counsel filed a brief in this Court summarizing their preferred outcomes. She stated as follows.

> As per my letter brief submitted to the [orphans' c]ourt, the oldest [sic] child, M.J.J.[,] wants [] Mother's rights [to be] terminated and wishes to have no contact with [] Mother. The youngest [sic] child, M.J.J.[, Jr.,] due to his age had no recollection of any contact

entered an opinion and order terminating Mother's rights.[4]  Mother timely filed a notice of appeal on April 26, 2018, along with a concise statement of errors complained of on appeal.[5]

Mother now raises the following claim for our consideration.  "Did the [orphans'] court properly consider Mother's attempt to seek a modification of the parties' custody order prior to the filing of the petition for involuntary termination?"  Mother's Brief at 4 (unnecessary capitalization omitted).  We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate

---

> with Mother and could not state an answer as to whether he wants Mother's rights to be terminated due to his special needs.

Children's Brief at 4.

[4] Stepmother filed petitions for adoption on April 19, 2018.

[5] It appears that Mother filed one notice of appeal from the order terminating her parental rights, which was copied and included in the record twice.  The correct procedure in this circumstance is to file a separate notice of appeal for each child.  *See* Pa.R.A.P. 341, Note ("Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  In a recent case, our Supreme Court held that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal."  *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018).  However, the Court clarified that it would apply its holding only "in future cases," because of decades of prior case law that seldom quashed appeals for that reason, and because the citation to case law contained in the note to Rule 341 was unclear.  *Id.*  Thus, because Mother filed her notice of appeal prior to the filing of our Supreme Court's decision in *Walker*, we do not quash her appeal.

courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Mother's parental rights pursuant to subsections 2511(a)(1) and (b), which provide as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

- 4 -

> relinquishing parental claim to a child or has refused
> or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.—**The court in terminating the rights
> of a parent shall give primary consideration to the developmental,
> physical and emotional needs and welfare of the child.  The rights
> of a parent shall not be terminated solely on the basis of
> environmental factors such as inadequate housing, furnishings,
> income, clothing and medical care if found to be beyond the
> control of the parent.  With respect to any petition filed pursuant
> to subsection (a)(1), (6) or (8), the court shall not consider any
> efforts by the parent to remedy the conditions described therein
> which are first initiated subsequent to the giving of notice of the
> filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

In the instant matter, Mother waived any challenge to subsection 2511(b) by failing to include it in her statement of questions involved and concise statement of errors complained of on appeal.  *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]ssues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.").  Mother also failed to develop her claim in the argument section of her brief.  *Id.* at 465-66 ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").  Thus, we review only

whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(a)(1).[6]

To meet the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child." *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)). A parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and

---

[6] Even if Mother had preserved a challenge to subsection 2511(b), it would be meritless. As noted throughout this memorandum, Children have had no contact with Mother since August 2012. Children's counsel reports that M.J.J. wants the orphans' court to terminate Mother's parental rights and that M.J.J., Jr., has no recollection of Mother. It is clear that Children do not share a bond with Mother and that termination will best serve their needs and welfare. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.").

must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

In its opinion accompanying the order on appeal, the orphans' court found that Mother refused to perform her parental duties for the last five years. Orphans' Court Opinion, 3/27/2018, at 3-6. The court reasoned that Mother had no contact with Children after 2012 and that she made no effort to contact Children until she filed a custody modification petition in July 2017. *Id.*

In response, Mother acknowledges her failure to maintain contact with Children. Mother's Brief at 8. However, she blames Father for this lack of contact, insisting that he refused to allow visits or telephone calls. *Id.* at 9, 11-12. Mother further argues that she attempted to perform her parental duties by retaining an attorney to file a custody contempt petition against Father. *Id.* at 9-12. She alleges that the attorney filed a custody modification petition instead and then withdrew the petition without her consent. *Id.* at 9-10. Mother asserts that the orphans' court should not terminate her parental rights based on the actions of her former attorney. *Id.* at 11.

Our review of the record supports the findings and conclusions of the orphans' court. As discussed above, Mother's last contact with Children occurred on M.J.J., Jr.'s, second birthday in August 2012. Both Father and Stepmother testified that Mother did not visit with Children after that date

despite being entitled to custody pursuant to the October 10, 2012 consent order. N.T., 2/14/2018, at 5, 16. Mother did not send Children cards, did not give them gifts, and did not call them on the telephone. *Id.* at 7, 16-17. Stepmother recounted that she and Father received only sporadic calls from Mother during which she would "ask for money, or to tell us she was homeless and stuff." *Id.* at 12. Mother's most recent call occurred in December 2014. *Id.* Stepmother also recounted that she would sometimes see Mother around town, but that Mother would not say anything to her. *Id.* at 9. She explained, "[w]e saw her twice at the Medical Arts Building probably 2015, 2016. And [M.J.J., Jr.,] and I saw her at Dollar Tree last Monday." *Id.* at 13.

Moreover, the record reveals that Mother had the ability to contact Children, but simply chose not to do so. Father testified that he resided at the same location from 2008 until October 2017. *Id.* at 17, 20. Mother was aware of the location of Father's residence because she resided there with him for almost two years. *Id.* at 17. Father testified that he changed his phone number in September 2011, but that he provided his new number to Mother and that it appeared in court records. *Id.* at 20. Stepmother testified that she maintained the same telephone number for fifteen to seventeen years and that she used it to contact Mother in the past.[7] *Id.* at 7-8.

---

[7] Stepmother testified that she called Mother in February 2015 to assure her that M.J.J., Jr., had been unharmed in a bus accident. N.T., 2/14/2018, at 6. Stepmother recalled that Mother "was kind of annoyed, she was confused. She thought it was [M.J.J.] that should have been on the Head Start bus, that [M.J.J., Jr.,] was too young to go to school. And she just hung up." *Id.*

While Mother claimed that she attempted to contact Children prior to filing her petition for modification of custody, and that Father foiled her attempts by arguing with her on the telephone about a loan they had taken out together, the orphans' court was free to reject this testimony. Notably, Mother's testimony was contradictory and confusing. For example, when the orphans' court asked Mother when she last attempted to call Children, she provided several different answers. Mother claimed that she last attempted to call Children in 2010, before changing her answer to 2014 or 2015, before claiming that she called "three times a day" from 2013 until 2015. *Id.* at 35-37.

Finally, while Mother filed her petition for modification of custody on July 12, 2017, prior to the filing of Father's termination petitions on November 27, 2017, this is not sufficient to preserve her parental rights. As this Court has stated, "[a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *B.,N.M.*, 856 A.2d at 855. A review of the whole history of this case reveals that Mother made no effort to maintain a relationship with Children for nearly five years. The fact that Mother made one attempt to perform parental duties in the nature of filing a petition with the court after this long period of apathy does not demonstrate the sort of good faith interest and effort that the Adoption Act requires. *See id.* Mother's claim that her attorney later withdrew the modification petition without her consent is

inconsequential and does not change our analysis. Thus, she is not entitled to relief.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to Children involuntarily. Therefore, we affirm the court's March 27, 2018 order.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/6/2018